MANLEY-STEARNS CONSTRUCTION COMPANY, A CO-PARTNERSHIP, *Plaintiff in Error*, v. CITY OF MIAMI, A MUNICIPAL CORPORATION, *Defendant in Error*.

Opinion Filed April 17, 1917.

A contract for the maintenance of paving in the streets of a city should not be construed to deprive the city of its governmental right to change the character of the pavement to meet new conditions, when the terms of the contract may fairly be so construed as to preserve the governmental rights of the city.

Writ of Error to Circuit Court for Dade County; H, Pierre Branning, Judge.

Judgment affirmed.

*A. J. Rose* and *Simon Pierre Robineau,* for Plaintiff in Error;

*James M. Carson* and *Carson & Pine,* for Defendant in Error.

WHITFIELD, J.—The partnership brought an action against the city on a contract. In four counts it is in effect alleged that in 1913 the Creosoted Wood Block Paving Company, a corporation, was awarded a contract, based upon an advertisement for bids, for grading and paving certain streets of the city consisting of "wood block surface pavement, set on one inch mortar cushion," to be paid for at a stated rate of compensation; that such contract provided for the maintenance of such streets for five years after final completion of the paving, as shown by portions of the contract herein set out; that the paving was completed and accepted by the city and payment therefor made; that thereafter a written tripartite agreement with the city was made whereby the plaintiffs were substituted for the Creosoted Wood Block Paving Company as to the maintenance of the pavement and the latter company was released by the city from its contract of maintenance, the contract of substitution being set out herein; that thereafter the Creosoted Wood Block Paving Company assigned and transferred in writing to the plaintiffs all of its "right, title, claim, interest and demand * under said contract;" that in 1915, and within five years after the final completion of the paving, the city found that a necessity arose for "opening, removing and replacing" a stated portion of the pavement on designated streets; "that no demand was made by said defendant of said Creosoted Wood Block Paving Company or of plaintiffs for permission for the opening of said pave-

VOL. 73, JANUARY TERM, 1917.     865

Manley-Stearns Const. Co. v. City of Miami—Opinion of Court.

ment; that said plaintiffs were ready and willing to remove and replace said pavement as aforesaid * * in person or through some duly accredited agent and, when necessity arose, as found by said City Council as aforesaid, the said plaintiffs offered to do the said work of opening, removing and replacing said sections of pavement as aforesaid, and the said Creosoted Wood Block Paving Company from the time of taking its said contract with said defendant, and the said plaintiffs from the time of the execution of the said contract of November 5, 1914, between it, said Creosoted Wood Block Paving Company and said defendant, have always performed and fulfilled all things on their part and behalf in the said contract to be performed and fulfilled and plaintiffs were at all times ready and willing and offered to open, remove and replace said pavement as aforesaid, * * and have always been ready and willing to perform and complete the whole of said work so found to be necessary, in pursuance of said contracts, all of which premises the said defendant has had notice.

Yet the plaintiffs in fact say that the said defendant contriving and wrongfully intending to injure the said plaintiffs did not, nor would, perform the said contracts, nor its said promises and undertakings, but did craftily and subtly thereby deceive the said plaintiffs in this, to-wit: that the said defendant, after having found that said necessity arose for opening, removing and replacing said sections of pavement as aforesaid, did not, nor would, make demand upon said plaintiffs for the opening, removing or replacing of said sections of pavement aforesaid, and did not, nor would permit the opening, removing or replacing of said sections of pavement by the plaintiffs, in person or through some duly accredited agent of plaintiff, but authorized and permitted said sections of

pavement to be opened, removed and replaced by others, over the objection and against the protest made by said plaintiffs to said defendant, and the said defendant then and there wrongfully discharged the said plaintiffs from the performance of its said agreement and undertaking to open, remove and replace said sections of pavement aforesaid * * and refused and still continues to refuse, to pay the said plaintiffs the compensation it agreed to pay to plaintiffs when said pavement was opened, removed and replaced, as provided for in said contracts aforesaid, whereby the said plaintiffs have lost and been deprived of the profits and advantages which they otherwise might and would have derived and acquired from the opening, removing and replacing of said pavement."

Damages are claimed.

The portions of the contracts referred to are as follows:

### "PAVEMENT GUARANTEES.

"(95) Upon the final completion of the work, the Contractor's tender of same for acceptance, he shall certify that all work which had been required and all materials used in the construction of the pavements was of such character as to insure that no repairs would be needed on account of the action of the elements or the usual wear incident to traffic, for a period of five (5) years, during which time any cracks, irregularities, settlements, depressions, soft spots, and the apparent disintegration of any composition pavement or the unevenness, settlement, undue expansion or injurious cracks in the brick, asphalt, or wooden block paving, shall be promptly corrected by the Contractor without cost to the city, upon the demand of the proper authorities, and in the event that after a reasonable notice the Contractor declines or

neglects to make the corrections or repairs deemed necessary, the city authorities may proceed to have the same done or do the work with their own employees and the cost thereof shall be paid by the contractor upon demand.

"(96) *Openings And Repairs.*— Should, in the opinion of the Board, any necessity arise for removing, repairing or replacing any section of the pavement, for the laying of water, gas or other mains, or the repair of same, or of any other purpose, upon official demand, the Contractor shall grant permission for the opening of the pavement by properly authorized persons or shall promptly attend to the same in person or through some duly accredited agent, provided, however, that in the event of an emergency, the City or any of its public service corporations shall have the right under this contract and bond to open any section of the pavement for immediate replacement or repair of underground properties or utilities and any section of pavement disturbed in such a manner shall be promptly repaired upon the requisition of the proper city officials. For all emergency or other repairs, in full compensation thereof, there shall be paid within thirty (30) days to the Contractor during the term of the guarantee, and in addition to the original contract prices, the further sums in accordance with the following:

"For each separate amount as ordered less than twenty (20) yards, 20 per cent.

"For each separate amount as ordered more than twenty (20) and less than fifty (50) yards, 15 per cent.

"For each seperate amount as ordered in excess of fifty (50) yards, 10 per cent.

"At the option of the city, if, after seven (7) days notice, the Contractor declines or refuses to renew or repair any work ordered or required by the city or its public service corporations through its duly authorized offi-

SUPREME COURT OF FLORIDA,

Manley-Stearns Const. Co. v. City of Miami—Opinion of Court.

cial, same may be done or performed or materials furnished for such restoration or repair and the cost of same shall be charged to the Contractor, who shall not complain of the character of the work done by the said city or its agents, as a reason for a release of the obligations for maintenance or guarantee under this agreement."

"WHEREAS, the Creosoted Wood Block Paving Company, is under contract with the City of Miami, for the maintenance of the wood block pavement on the following streets, to-wit:

"On 12th Street from Avenue B to the Florida East Coast Railway tracks;

"On Avenue D from the Miami river bridge to the tracks of the Florida East Coast Railway between Fifth and Sixth Street;

"On Avenue B from 12th Street to 10th Street, and on Avenue C from 12th Street to 10th Street,

"AND WHEREAS the said Creosoted Wood Block Paving Company has requested the City of Miami to release it from said maintenance, of said above described pavement in consideration of the sum of five hundred dollars to be paid in cash, and

"WHEREAS Manley Stearns Construction Company, has offered the City of Miami to maintain the said wood block pavement on said above described streets at and for the sum of five hundred dollars, such said sum not to be paid by the city to said Manley Stearns Construction Company until the above mentioned five years period of maintenance has fully elapsed, and

"WHEREAS the city of Miami has agreed in consideration of said sum of five hundred dollars, to it in hand

## VOL. 73, JANUARY TERM, 1917.     869

Manley-Stearns Const. Co. v. City of Miami—Opinion of Court.

paid, to release the said Creosoted Wood Block Paving Company from such clause and has agreed that the said maintenance of said wood block pavement shall continue by Manley Stearns Construction Company, under their offer as aforesaid.

"Now THEREFORE, in consideration of the premises, the City of Miami does hereby acknowledge the receipt of five hundred dollars from Creosoted Wood Block Paving Company and releases it from the maintenance clause for the wood block pavement on streets aforesaid and hereby accepts the offer of said Manley Stearns Construction Company, and agrees to pay it the sum of five hundred dollars for the maintenance of said wood block pavement on the streets above described, but said payment not to be made until the five years period for maintenance has fully elapsed.

"It is thoroughly understood and distinctly agreed that said Manley Stearns Construction Company are to be held for all of the maintenance obligations of the Creosoted Wood Block Paving Company under its contract with the City of Miami aforesaid, which contract is hereby distinctly referred to and as far as may be necessary, is made a part of this agreement, and they are hereby subrogated to all the rights and privileges of the said Creosoted Wood Block Paving Company under said contract.

"IN WITNESS WHEREOF the said Creosoted Wood Block Paving Company by Lester B. Manley, and the Manley Stearns Construction Company by Lester B.

Manley, have caused their names to be signed this fifth day of November, 1914.

"Creosoted Wood Block Paving Company
    By Lester B. Manley, *Attorney in fact,*

"Manley Stearns Construction Company
    By Lester B. Manley, *President.*

City Of Miami, Florida.
    By J. W. Watson, *Mayor.*
"(Cor. City Seal)

"Attest:
    "W. B. Moore,
        "*City Clerk.*"

The court sustained a demurrer to the declaration and the plaintiffs not desiring to amend, final judgment for the defendant was rendered and the plaintiff took writ of error.

A construction of the contract will disclose the rights of the parties.

The real purpose of the quoted provision (95) of the original contract was that after the final completion of the paving and its acceptance by the city, the contractor should remain obligated to insure the city against expense for repairs in the maintenance of the pavement made necessary by stated causes for five years. Repairs as stipulated for were to be made "by the contractor, without cost to the city, upon the demand of the proper authorities, and in the event that after a reasonable notice the Contractor declines or neglects to make the corrections or repairs deemed necessary, the city authorities may proceed to have the same done or do the work with their own

employees and the cost thereof shall be paid by the Contractor upon demand."

The real purpose of the quoted provision (96) of the original contract was that should the city find it necessary to remove, or repair or replace any section of the pavement, "for the laying of water, gas or other mains, or the repair of same, or any other purpose" and in emergencies, the right to do so as stated was expressed, and the compensation "for all emergency or other repairs, in full compensation thereof," was agreed on if such repairs are done by the Contractor. Emergency or other replacement for which the city was to pay the Contractor at the agreed rate, if not done by the Contractor after notice could be done by the city and charged to the Contractor "who shall not complain of the character of the work done by the said city or its agents, as a reason for a release of the obligations for maintenance or guarantee under this agreement." If demand was not made on the Contractor and the stipulated "reasonable notice" given, such Contractor was not required under paragraph (95) "to make the corrections or repairs deemed necessary" by the city or pay to for the same. Unless the stipulated notice was given, the Contractor was not required by paragraph (96) "to renew or repair any work ordered or required by the city," and the cost thereof cannot be charged to the Contractor, and the Contractor may "complain of the character of the work done by the said city or its agents, as a reason for a release of the obligations for maintenance or guarantee under this agreement." The contract substituting the plaintiffs for the original Contractor covers "all of the maintenance obligations" of the Contractor.

Under the original contract the reciprocal features are that, based upon the original consideration, the Contractor agreed to maintain the pavement against defects

as stipulated, and in case of emergency or other displacements, the Contractor agreed that if notified as stipulated he would renew or repair at the agreed price, or upon default could not complain of the character of the repairing done as affecting the obligation to maintain. No obligation rests upon the Contractor if the agreed notice be not given or repairs required, and as a corollary there was no obligation to give the notice if the repairing is not demanded of the Contractor; and the Contractor having no obligation if not duly notified, the city was not obligated to have the emergency and other repair work done by the Contractor, where the Contractor is not held responsible for the price or the character of the work, but may plead the character of the work done by the city as a defense against the Contractor's obligation to maintain the pavement as stipulated. The plaintiff's contract rights relate to "maintenance" of the pavements as originally completed, not to a change in the pavement. Any other construction of the contract is inadmissible, since it would disclose an unlawful attempt to deprive the city of its governmental right to change the character of the pavement on its streets to meet new conditions. Even if such governmental right may be relinquished by contract, it must be done in terms clearly disclosing an unequivocal purpose to do so.

Judgment affirmed.

BROWNE, C. J., and TAYLOR, SHACKLEFORD and ELLIS, JJ., concur.